**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LAUREN E. CANTU, *Plaintiff* | § § § | |
| v. | § § | 5:19-CV-1067-XR |
| WAYNE WILKENS TRUCKING, LLC, AND TED A. WILLIAMS, *Defendants* | § § § § | |

**ORDER**

On this date, the Court considered Plaintiff's Motion to Exclude the Opinion Testimony of Paul Marcus Murphy (ECF No. 37) and Defendants' Response (ECF No. 39). After careful consideration, the Court issues the following order.

**BACKGROUND**

This case is brought by Plaintiff Lauren E. Cantu ("Plaintiff") for damages arising from a motor vehicle collision. Plaintiff alleges that on January 29, 2019, while driving northbound on Interstate Highway 37, she was struck by a commercial motor vehicle driven by Defendant, Ted A. Williams ("Williams"). ECF No. 28 ¶ 8. Plaintiff alleges that Williams was distracted and made an unsafe lane change into her lane and collided with her vehicle. *Id*. As a result of the crash, Plaintiff sustained injuries to her lower back and neck. *Id*. Plaintiff asserts that Williams was operating the commercial vehicle within the course and scope of his employment with Defendant Wayne Wilkens Trucking, LLC ("Wilkens"). *Id*. ¶ 3.

After the collision, Plaintiff visited Dr. Sanjay Misra M.D. (Dr. Misra), an orthopedic surgeon, for her neck and back pain. *Id*. Dr. Misra performed multiple procedures on Plaintiff, including two lumbar spine epidural steroid injections and a spinal surgery. *Id*.

1

Plaintiff named Dr. Misra as a "non-retained expert" and a "treating medical provider," giving notice that Dr. Misra would testify as to his medical treatment on the Plaintiff and the reasonableness of her medical bills. ECF No. 20, at 4–7. In response, the Defendant filed a controverting affidavit from medical business administrator, Paul Marcus Murphy ("Mr. Murphy"), challenging the reasonableness of the charges on Plaintiff's medical bills. ECF No. 37, Exhibit A (Controverting Affidavit of Paul Marcus Murphy to Cost of Services of Lauren Cantu, Jan. 14, 2020). On August 28, 2020, Plaintiff filed a Motion to Exclude the Testimony of Paul Marcus Murphy as to the Cost of Services, claiming that Mr. Murphy's testimony is irrelevant, unreliable, and that Mr. Murphy is not qualified to testify as an expert on medical costs. ECF No. 37, at 2.

## DISCUSSION

### I. Legal Standard

Rule 702 of the Federal Rules of Evidence allows a witness "who is qualified as an expert" to testify if:

   a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
   b)   the testimony is based on sufficient facts or data;
   c)   the testimony is the product of reliable principles and methods; and
   d)   the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining the admissibility of expert testimony. *Daubert* requires the district courts to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards. *Id.* at 589. As a preliminary matter, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009)

(quoting FED. R. EVID. 702). If the expert is qualified, a court must follow *Daubert*'s analytical framework to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Id*. at 592–93. In *Daubert*, the Supreme Court enumerated five nonexclusive factors to consider when assessing reliability: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id*. at 593–94; *see also Burleson v. Tex. Dep't of Criminal Justice*, 393 F. 3d 577, 584 (5th Cir. 2004). The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). The point of this inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*.

The relevance inquiry requires the Court to determine if expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FED. R. EVID. 401.

In determining the admissibility of expert testimony, the district court should approach its task "with proper deference to the jury's role as the arbiter of disputes between conflicting

opinions." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *see also* FED. R. EVID. 104.

## II. Analysis

Plaintiff argues that Mr. Murphy's opinion should be excluded because he relies on irrelevant payment data, his methodology has not been peer reviewed, and he is not familiar with charges for the type of surgery that Plaintiff underwent. Additionally, Plaintiff asks the Court to disregard the affidavit rule set out in Texas Civil Practice & Remedies Code § 18.001.

### A. Texas Civil Practice & Remedies Code § 18.001 is purely procedural and not applicable in Federal Court.

As a matter of Texas substantive law, Plaintiff is required to prove that her medical expenses associated with the accident were reasonable and necessary. Section 18.001 provides an alternative to expert testimony for a plaintiff to prove up the reasonableness and necessity of medical expenses. That section provides:

> (b) Unless a controverting affidavit is served as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary. The affidavit is not evidence of and does not support a finding of the causation element of the cause of action that is the basis for the civil action.

> (f) The counteraffidavit must give reasonable notice of the basis on which the party serving it intends at trial to controvert the claim reflected by the initial affidavit and must be taken before a person authorized to administer oaths. The counteraffidavit must be made by a person who is qualified, by knowledge, skill, experience, training, education, or other expertise, to testify in contravention of all or part of any of the matters contained in the initial affidavit. The counteraffidavit may not be used to controvert the causation element of the cause of action that is the basis for the civil action.

. . .

TEX. CIV. PRAC. & REM. CODE § 18.001.

Texas courts have recognized that § 18.001 streamlines proof and provides a significant savings of time and cost to litigants, particularly personal injury litigants, by providing a means to prove up the reasonableness and necessity of medical expenses. *Haygood v. De Escabedo*, 356 S.W.3d 390, 397 (Tex. 2011); *Turner v. Peril*, 50 S.W.3d 742, 746 (Tex. App.–Dallas 2001, pet. denied).

Despite a lack of consistency from courts in this Circuit regarding the applicability of § 18.001, this Court has surveyed the split between Western District courts on the issue and held that § 18.001 is purely procedural and thus not applicable in federal court. *See Islas v. United States*, SA-19-CV-322-XR, 2020 U.S. Dist. LEXIS 80904, at *13 (W.D. Tex. Apr. 16, 2020). The Court will do so again here. The Defendant's controverting affidavit will be treated as an expert disclosure under the Federal Rules of Evidence and Plaintiff's response as a motion to exclude expert testimony regarding the reasonableness of Plaintiff's medical expenses. *See* ECF No. 37, at 3 n.2 ("Plaintiff moves under Federal Rule of Evidence regarding expert testimony to exclude Mr. Murphy's opinion and treats his affidavit as equivalent to an expert report rather than invoking the text of section 18.001."); ECF No. 39, ¶ 4 ("Defendant designated Murphy in its Expert Designation, and reproduced counter-affidavit, CV, and appendix as his report."). The Defendants have supplemented Mr. Murphy's fee schedule and list of cases in which he has testified as an expert in the last four years by email on July 24, 2020. ECF No. 39, ¶ 4, n.9 (Exhibit B, Email String dated July 24, 2020 and attachments). Defendants filed notice of Mr. Murphy's controverting affidavit on January 15, 2020, months ahead of the April 3, 2020 deadline to file an expert declaration. The first question is thus whether Mr. Murphy is qualified to testify as an expert under Federal Rule of Evidence 702.

B. <u>Mr. Murphy is not qualified to opine on the reasonable value of Plaintiff's healthcare services.</u>

As a preliminary matter, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702). Plaintiff asserts that Mr. Murphy is not a medical doctor and that "[h]e has not reviewed those charges nor know what expenses patients typically incur for that treatment or others. He only knows what providers receive in payment." ECF No. 37, at 15. Defendants respond that while it is true that Mr. Murphy is not a medical doctor, he is a medical practice administrator and has extensive experience working with medical billing and recovery for physicians. ECF No. 39 ¶¶ 9–11.

The question, then, is whether Mr. Murphy's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). This necessarily entails an inquiry into Mr. Murphy's background. After graduating with a bachelor of business administration from the University of Houston, Mr. Murphy worked for an organization called TRW. His job primarily involved helping providers get paid for the work they did. ECF 39 Ex. 3 at 55–57. Throughout his career, Mr. Murphy developed extensive expertise in Clinical Procedure Terminology ("CPT") Codes. Mr. Murphy has a certification as a coding specialist and has hired and overseen other certified medical coders. ECF No. 39 Ex. 3 at 58–59. CPT Codes are a uniform lexicon created by the American Medical Association to better facilitate medical provider claims to insurance companies. *Id*. at 60. Essentially, these codes aid in the process by which medical providers get paid by insurance companies. Mr. Murphy also testified about his experience negotiating contracts between providers and insurance companies. *Id*. at 61–62. Surely, Mr. Murphy is qualified to opine on the payments that providers receive from insurance companies. The issue is whether Mr. Murphy's experience helping medical providers

"get paid" involves deciding what to charge a patient, rather than an insurance company, for a particular procedure.

As Plaintiff notes, the committee notes to Rule 702 provide that "[i]f the witness is relying solely or primarily on experience, then the witness must explain how the experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." ECF 37 at 14. Other district courts in this Circuit have held, "An expert 'need only possess a higher degree of knowledge, skill, experience, training, or education than an ordinary person in the subject matter of [their] testimony.'" *Collins v. Benton*, No. CV 18-7465, 2020 WL 3618984, at *5 (E.D. La. July 2, 2020) (quoting *Thomas v. Chambers*, No. CV 18-4373, 2019 WL 8888169, at *12 (E.D. La. Apr. 26, 2019)). Based on the above, it is unclear to the Court how Mr. Murphy's experience qualifies him to testify on what is a reasonable amount to charge Plaintiff for her medical expenses. As Mr. Murphy admits in his deposition testimony, there is a distinction between what a medical provider can charge a patient and what the medical provider will be paid. ECF 39 Ex. 3, at 18. When asked the straightforward question about his experience with medical billing, Mr. Murphy only reiterated his experience "helping providers get paid."

> Q. But what is your training, education and experience in medical billing?
>
> A. A), I have a degree in finance, which is a business background, auditing, accounting, statistical analysis. B), I've got 30 years of experience in helping providers get paid for their work. Each practice that I've been at -- each medical group has trained me for their practice.

7

> For example, in cardiology, they're not going to be using spinal surgery codes. They're going to be using cardiology codes for left heart cath, right heart cath, diagnosis codes that are specific to that.
>
> And so for every medical group that I've been with, I've had to learn their lingo, their terminology and learn their practice management software. So it's an ongoing process.

*Id.* at 67. Although Mr. Murphy could reasonably opine on what a medical provider might reasonably be paid by an insurance company, there is no clear evidence that he has the experience or expertise necessary to opine on whether a price chosen by a medical provider to charge a patient is reasonable. Stated differently, while it is clear that Mr. Murphy has extensive experience collecting money from Medicare and insurance companies on behalf of medical providers, it is not so clear what experience makes him qualified to testify on what a patient should reasonably be charged for her procedures.

Defendants cite *Gunn v. McCoy*, 554 S.W.3d 645 (Tex. 2018), to support their proposition that someone with experience similar to Mr. Murphy's but who is not a medical provider can opine on what medical expenses are reasonable and necessary in the context of personal injury litigation. ECF 39 ¶ 10. But the relevant portion of that case involves the propriety of non-medical providers filing controverting medical billing affidavits. *Gunn*, 554 S.W.3d at 671–75. The Texas Supreme Court held that medical billing affidavits, a procedural device permitted by Texas Civil Practice & Remedies Code § 18.001, may be attested to by persons who were not medical providers or custodians of record of medical billing receipts. *Id.* at 674. However, as noted, that procedural device does not exist in Federal Courts, which are charged to evaluate expert testimony under the scheme created by *Daubert* and Federal Rule of Evidence 702.

"District courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.' FED. R. EVID. 702. A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir.1999) (internal citation omitted). Having reviewed Mr. Murphy's experience and testimony, the Court finds that Defendants have not met their burden of proving by a preponderance of the evidence that Mr. Murphy is qualified to opine on the reasonableness of Plaintiff's medical charges.

An expert costs witness should be able to testify as to the reasonableness of the Plaintiff's expenses —the amount actually paid or incurred by the Plaintiff. But the Court has not found evidence that Mr. Murphy is actually involved with the patient-facing end of medical billing. Mr. Murphy's affidavit states:

> I have billed over 100,000 medical bills, appealed thousands and thousands of those medical bills, reconciled payments of those bills and the explanation of payments/benefits, remittance reports, posted payments and have made calculated adjustments of the billed charges of multiple medical providers. On behalf of many providers, I have performed subrogation duties to collect funding from the responsible party(s).

ECF No. 37 Ex. 1 ¶ 7. Conspicuously absent from this averment is an affirmative statement that Mr. Murphy was responsible for charging patients for the services rendered by a physician. Mr. Murphy does not need to be a doctor to opine on the reasonableness of Plaintiff's charges, but he must have an expertise in charging or billing *patients*. It appears from the submissions to the Court that Mr. Murphy's expertise is in collecting payment from insurance companies. In fact, Mr.

Murphy's only experience dealing with patient billing seems to be "negotiating payment agreements with uninsured patients." *Id*. ¶ 8. An ambiguous statement like this leaves unclear whether he did more than simply setting a fee payment schedule. Without more, the Court declines to find Mr. Murphy qualified to opine on the reasonableness of the expenses incurred by the Plaintiff.

## CONCLUSION

For the reasons stated herein, the Court GRANTS Plaintiffs Motion to Exclude the Testimony of Paul Marcus Murphy as to the Cost of Services. (ECF No. 37).

It is so ORDERED.

**SIGNED** this 7th day of October, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE